1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LUIS LORENZO ARMENTERO,

11              Plaintiff,                    No. CIV S-08-2790 GGH P

12         vs.

13   S. WILLIS,                               ORDER &

14              Defendant.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

17   1983.  Pending before the court is defendant's motion for summary judgment, filed on November

18   17, 2010, which was re-served upon plaintiff, pursuant to the court's order,[1] at his updated

19   address, on January 24, 2011.  Thereafter, plaintiff filed, on February 10, 2011, a document that

20   he denominated a motion for summary judgment, which could be construed as a cross-motion for

21   summary judgment.  Plaintiff, however, states that his "motion" is based on the allegations of his

22   amended complaint and evidence (in the form of exhibits) attached thereto and identifies the

23   defendant as the "moving" party in his response to defendant's motion.  Docket # 30, pp. 4-5.[2]

24   

---

25         [1] See Order, filed on January 24, 2011 (docket # 28).

26         [2] The court's electronic pagination is referenced.

1

1  Defendant argues in a response, filed on March 22, 2011, that plaintiff has not set forth a separate

2  statement of undisputed facts in accordance with Fed. R. Civ. P. 56, and although entitled a

3  [cross]-motion, much of the wording is more indicative of an opposition.  Although plaintiff

4  words his statement of undisputed facts as an opposition to defendant's motion for summary

5  judgment, plaintiff does set forth a statement of such purported undisputed material facts,

6  seeking to counter defendant's.  Plaintiff states that his "motion" is based on the allegations of

7  his amended complaint and evidence (in the form of exhibits) attached thereto.  Docket # 30, pp.

8  2-3.  Plaintiff identifies the defendant as the "moving" party in his response to defendant's

9  motion.  Id., at 5, 16.   In addition, plaintiff's argument is framed as one in which he contends

10  that defendant should be denied summary judgment, i.e., as an opposition, rather than as a cross-

11  motion for summary judgment, although he adds a paragraph at the end of his argument seeking

12  that summary judgment be entered in plaintiff's favor.  See Docket # 30, pp. 8-17.  While

13  plaintiff submits his declaration in support of his [cross]-motion for summary judgment, he also

14  submits his own statement of "undisputed material facts" in opposition to defendant's summary

15  judgment motion.  Id., at 18-23.  Given the thrust of his argument, the court will construe

16  plaintiff's "motion" (id., at 2-4),  as his opposition to defendant's summary judgment motion.

17  Plaintiff's Allegations

18          This action proceeds on plaintiff's amended complaint, filed on April 23, 2009,

19  against defendant S. Willis.  Amended Complaint (AC), Docket # 12.  Plaintiff alleges defendant

20  Willis, without explanation, confiscated plaintiff's ID card for ten consecutive days, which

21  interfered with plaintiff's psychiatric treatment.  Id., at 3.  On June 22, 2007 at 6:15 p.m., as

22  plaintiff was returning to his assigned dormitory, # 19 in Facility IV, after having taken his

23  psychiatric medication at the facility's pills line clinic window, plaintiff was stopped suddenly by

24  defendant S. Willis and asked for his ID card.  Id., at 37-38.  When plaintiff asked why he wanted

25  the ID, defendant Willis told plaintiff he would return it when he finished using it but offered no

26  explanation for confiscating it.  Id., at 38.  Plaintiff alleges that defendant Willis's confiscation of

2

his ID card for a ten-day period, resulted in plaintiff's being unlawfully confined to his quarters;
he claims the confinement was absent any justification as there was no disciplinary write-up and
he was denied program, privileges, necessities without due process. Id. He alleges his Eighth
Amendment rights were violated by defendant's interference with his medical treatment for that
period. Id. In addition, because he had no ID card, he was sent back from the chow hall before he
got there from June 22, 2007 through June 24, 2007. Id., at 39.

On July 2, 2007, plaintiff filed a 602 inmate appeal against defendant
Willis for confiscating the card, seeking restitution of his ID card. AC, pp. 9-11, 38. Although
the appeal was mailed to the sergeant's office, defendant Willis failed to respond to the appeal
altogether and lost the original appeal, a copy of which was then mailed to the appeals'
coordinator's office. Id. Plaintiff received a form from the appeals coordinator on July 9, 2007,
telling him to obtain an informal level response directly from defendant Willis. Id., at 18, 39.
Plaintiff personally gave defendant Willis a second original appeal on July 13, 2007, but the
defendant again failed to respond. Id., at 27, 39. On July 31, 2007, plaintiff mailed an inmate
request claiming that Willis had failed to respond to the second appeal. Id. On August 8, 2007,
plaintiff mailed another inmate request to defendant Willis to which he again failed to respond
and plaintiff mailed a copy to the appeals coordinator; on August 26, plaintiff filed a request to
the appeals coordinator's office indicating again that defendant Willis had failed to respond. Id.,
at 28-29, 39-40. On August 29, 2007, plaintiff was ordered by the appeals coordinator to submit
another appeal regarding defendant Willis, after which plaintiff mailed a letter on September 2,
2007, to the appeals coordinator. Id., at 29-30, 40. Plaintiff, on September 4, 2007, filed another
inmate request seeking an informal level response from defendant Willis, to which he failed to
respond again. Id., at 31, 40. Plaintiff received a screening form on September 6, 2007, giving
him instructions (apparently to submit another 602 appeal with regard to defendant Willis). Id.,
at 32, 40. On September 26, 2007, plaintiff filed yet another 602 appeal against defendant Willis
in response to a letter from the appeals coordinator on September 17, 2007. Id., at 12-15, 41.

1    Plaintiff alleges that defendant Willis never gave him a reason for confiscating the

2  ID card; that no sufficient reason was documented for the 10-day period wherein he did not

3  return the card, resulting in plaintiff having not been able to receive his medical/psychiatric

4  treatment, which led to plaintiff's "severe emotional distress, mental anguish, worry, anger,

5  depression, grief and inability to sleep"; and that the defendant could easily have documented the

6  number and name from the ID card and returned it in a proper and timely manner.  AC, pp. 42-4.

7  Plaintiff seeks money, including punitive, damages, as well as declaratory relief.  Id., at 44.

8  Motion for Summary Judgment

9    Defendant argues that he is entitled to summary judgment as a matter of law

10 because, although he evidently at least temporarily misplaced plaintiff's ID card, he did not

11 intentionally interfere with plaintiff's medical treatment and was not deliberately indifferent to a

12 serious medical need.  Motion for Summary Judgment (MSJ), pp. 7-10.  Defendant further

13 contends that he did not violate plaintiff's right to due process.  Id., at 10-11.  Although

14 defendant adamantly maintains that plaintiff cannot establish a constitutional violation by

15 defendant, "in an abundance of caution," defendant maintains he is entitled to qualified

16 immunity.  Id., at 11-13.

17 Motion for Summary Judgment

18    Defendant moves for summary judgment on the ground that he is so entitled as a

19 matter of law because he did not show deliberate indifference to plaintiff's serious medical needs

20 in violation of the Eighth Amendment and did not violate plaintiff's Fourteenth Amendment due

21 process rights; he also argues, "in an abundance of caution," that he is entitled to qualified

22 immunity.  Motion for Summary Judgment (MSJ), p. 1-2, 7-13.

23    Legal Standards for Summary Judgment under Rule 56

24    Summary judgment is appropriate when it is demonstrated that there exists "no

25 genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

26 law."  Fed. R. Civ. P. 56(c).

4

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

should be granted, "so long as whatever is before the district court demonstrates that the standard

for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

2553.

   If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

(1986).  In attempting to establish the existence of this factual dispute, the opposing party may

not rely upon the allegations or denials of its pleadings but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, see

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

1  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

2  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

3  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

4         In the endeavor to establish the existence of a factual dispute, the opposing party

5  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

6  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

7  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

8  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

9  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

10  56(e) advisory committee's note on 1963 amendments).

11         In resolving the summary judgment motion, the court examines the pleadings,

12  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

14  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

15  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

16  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

18  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

19  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

20  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

23         On June 10, 2009 (docket # 17), the court advised plaintiff of the requirements for

24  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

25  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

26  411-12 (9th Cir. 1988).  The above advice would, however, seem to be unnecessary as the Ninth

1    Circuit has held that procedural requirements applied to ordinary litigants at summary judgment

2    do not apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the

3    district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*

4    inmates and ... avoid applying summary judgment rules strictly."  Id. at 1150.  No example or

5    further definition of "liberal" construction or "too strict" application of rules was given in Ponder

6    suggesting that any jurist would know inherently when to dispense with the wording of rules.

7    Since the application of any rule which results in adverse consequences to the pro se inmate

8    could always be construed in hindsight as not liberal enough a construction, or too strict an

9    application, it appears that only the essentials of summary judgment, i.e., declarations or

10   testimony under oath, and presentation of evidence not grossly at odds with rules of evidence.

11   Undisputed Material Facts

12           The court finds the following facts to be undisputed after reviewing the

13   defendant's and plaintiff's undisputed facts and supporting evidence: defendant Willis, a

14   correctional officer employed by CDCR at California State Prison-Solano (CSP-Sol) at the

15   relevant time, confiscated plaintiff's prison ID card at CSP-Sol on June 22, 2007.  Plaintiff had

16   just been to the medical clinic window where medication is dispersed and taken.   Defendant

17   Willis offered no explanation for confiscating the ID card, but told plaintiff he would return the

18   card.  Plaintiff did not have an ID card in his possession for the ten days beginning on June 22,

19   2007, through July 2, 2007, causing him problems, including that plaintiff was unable to take his

20   psychiatric medication for that ten-day period.  Plaintiff's grievances against defendant Willis

21   were denied.

22   Facts in Dispute

23           Facts that are disputed include: whether defendant Willis was permitted to keep

24   plaintiff's ID card for ten days; whether defendant Willis intentionally interfered with plaintiff's

25   psychiatric care, knew that plaintiff was being denied treatment or even that he was being denied

26   treatment.  MSJ, p. 4, Defendant's Undisputed Facts (DUF) # 8, citing MSJ, p. 14, Declaration of

1   defendant Willis, ¶ 9; Plaintiff's statement of Undisputed Facts in opposition (Opp.), pp. 18-19,

2   to MSJ [PUF] # 4, # 6, # 8, citing the verified amended complaint, at pp. 38, 42-43[3] ¶¶ 14, 30-32;

3   the inmate pass dated 6/24/07 at p. 26[4] of the amended complaint; the inmate request for

4   interview dated 8/08/07 at p. 28 of the AC.  Although defendant maintains that he could not find

5   plaintiff's ID card for a week and then returned it to plaintiff's building, while asserting that the

6   obligation to replace a lost ID card is that of the prisoner (MSJ, p. 9, DUF # 8, # 9, citing MSJ, p.

7   14, Declaration of defendant Willis, ¶¶ 8, 10), plaintiff asserts that as the ID card was not lost but

8   confiscated by defendant Willis that it was his duty to return it but that plaintiff was taken after

9   ten days to the R/R office to replace the ID.[5]  Opp., p. 19, PUF #9, plaintiff's declaration, ¶¶ 6-7 ,

10  AC, pp. 37-38, ¶¶ 12, 14.

11  Legal Standard for Eighth Amendment Claim

12          In order to state a § 1983 claim for violation of the Eighth Amendment based on

13  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

14  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

15  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

16  serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

17  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

18  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

19  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

20          A serious medical need exists if the failure to treat a prisoner's condition could

21

22          [3] Again, the court's electronic pagination is referenced.

23          [4] The court's electronic pagination is referenced.

24          [5] It is not entirely clear whether plaintiff is contending that the ID card he finally received
25  was a replacement card or the one defendant declares that he returned to plaintiff's building a
    week later, since while plaintiff declares that he obtained a replacement card himself, he also sets
26  forth as his own undisputed fact that it took defendant Willis ten days to return the ID card.
    Opp., PUF # 5, citing AC, pp. 37-38, ¶¶ 12-14.

1    result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

2    that a prisoner has a serious need for medical treatment are the following:  the existence of an

3    injury that a reasonable doctor or patient would find important and worthy of comment or

4    treatment; the presence of a medical condition that significantly affects an individual's daily

5    activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

6    F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

7    (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

8    grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

9              In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

10   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

11   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

12   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

13   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

14   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

15   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

16             It is nothing less than recklessness in the criminal sense—subjective standard—

17   disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

18   1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

19   that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

20   114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

21   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

22   847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

23   knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

24   obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

25   1981.  However, obviousness per se will not impart knowledge as a matter of law.

26             Also significant to the analysis is the well established principle that mere

9

1   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

2   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

3   662 F.2d 1337, 1344 (9th Cir. 1981).

4          Moreover, a physician need not fail to treat an inmate altogether in order to violate

5   that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

6   1989).  A failure to competently treat a serious medical condition, even if some treatment is

7   prescribed, may constitute deliberate indifference in a particular case.  Id.

8          Additionally, mere delay in medical treatment without more is insufficient to state

9   a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

10  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

11  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

12  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

13  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

14  to provide additional support for a claim of deliberate indifference; however, it does not end the

15  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

16  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

17  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

18  the defendant."  McGuckin, 974 F.2d at 1061.

19         Superimposed on these Eighth Amendment standards is the fact that in cases

20  involving complex medical issues where plaintiff contests the type of treatment he received,

21  expert opinion will almost always be necessary to establish the necessary level of deliberate

22  indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

23  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

24  treatment he received equated with deliberate indifference thereby creating a material issue of

25  fact, summary judgment should be entered for defendants.  The dispositive question on this

26  summary judgment motion is ultimately not what was the most appropriate course of treatment

1  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

2  criminally reckless.

3          On June 22, 2007, defendant Willis declares under penalty of perjury that he

4  witnessed the plaintiff leave the medical clinic window, placing pills in his pocket rather than in

5  his mouth, after which he immediately confiscated plaintiff's prison ID card, telling plaintiff he

6  would return it.  Defendant Willis's Declaration, ¶¶ 3-4.  Defendant Willis states that he is

7  entitled to take a prisoner's ID cards [sic] when he believes "an infraction has been committed in

8  [his] presence."  Id., at ¶ 5.  Defendant Willis further declares that an inmate can have his ID card

9  replaced by reporting its loss to a building officer and that it is the prisoner who is obligated to

10  replace a lost ID card.  Id., at ¶¶ 7, 10.  Because he was busy, on June 22, 2007, defendant Willis

11  declares he did not write up the infraction.  Id., at ¶ 8.  He attests that he could not find plaintiff's

12  ID card until a week later, returning it to the building where plaintiff was housed, without writing

13  an infraction against plaintiff.  Id.  Defendant declares that he "did not intentionally interfere

14  with plaintiff's medical and/or psychiatric care" and "in fact...had no knowledge that plaintiff

15  was being denied any treatment, if in fact he was...."  Id., at ¶ 9.

16          Defendant maintains that plaintiff cannot show that defendant's actions rise above

17  mere negligence, that plaintiff cannot show that a serious medical need existed and that any delay

18  in treatment (caused by plaintiff not having his ID card) was harmful.  MSJ, p. 10.  Defendant

19  also contends that plaintiff may have failed to mitigate his damages by failing to obtain a new ID

20  card.  Id.

21          Plaintiff counters that the defendant failed to make a good faith effort to respond

22  to plaintiff's appeals of 7/02/07, 7/13/07 and 9/26/07.  Opp., p. 8, citing appeals attached to AC,

23  as noted within plaintiff's amended complaint above.  Plaintiff contends that defendant's conduct

24  deprived him of prescribed psychiatric medication and interrupted his treatment for ten days,

25  affecting plaintiff by causing him severe stress, continuous headaches, an inability to sleep, neck

26  pain, muscle tension, tooth grinding because the medication of which he was deprived allowed

him to sleep and relaxed his muscle tension.  Id., at 8-9  Plaintiff argues that he suffered severe

depression and anger, became very worried and anxious, became aggressive with other prisoners

and with prison personnel.  Id.  Plaintiff also claims that not having his ID card gave him a

problem with receiving his correspondence leading to many arguments with officials (id., at 9), a

claim that does not come within the claims that are before this court.   Further, plaintiff contends

that he "suffered a long-term stress and a cascade ... revving up his muscles as well as his heart,"

which symptoms, plaintiff asserts, according to doctors, "are often related to chronic stress."  Id.

       Plaintiff further contends that defendant Willis knew that plaintiff took psychiatric

medication and could injure himself both emotionally and mentally if his ID card were

confiscated for ten consecutive days (such that he could not receive the medication).  Opp., p. 9.

Within plaintiff's verified amended complaint, plaintiff stated that at the facility's pill line clinic

window a notice is inscribed "No ID Card, No Medication," which injunction the nurses enforce.

AC, pp. 42-43.  Plaintiff asserts that he is a mental health program patient and that defendant was

deliberately indifferent to plaintiff's being deprived of his psychiatric medication.  Id., at 10.

Plaintiff maintains that the defendant violated CAL. CODE REGS. tit.xv, § 3019[6] by not returning his

ID timely, as well as by failing to provide plaintiff with a temporary ID so that he could receive

his medication for the ten-day period he did not have ID.  Id.

       What is at issue is the ten-day period during which plaintiff was unable to receive

his prescribed psychiatric medication because he did not have his prison ID due to defendant

---

[6] "§ 3019.  Identification.  Inmates must carry on their person any identification and privilege card issued for identification purposes, in accordance with institution procedures. Inmates must not mutilate or destroy such cards nor possess the card of another inmate. An inmate must surrender his or her identification card or cards at the request of any employee. Unless a card is being officially recalled, the card(s) will be promptly returned to the inmate when staff's use of the card has been accomplished.  An inmate may be charged for replacement of a deliberately mutilated, lost or destroyed card in accordance with section 3011. An inmate may also be charged for replacement of a card if a physical change in the inmate's appearance is a matter of his or her own choice and the change occurs within six months of the issue of a new or replacement card. An inmate will not be charged for replacement of a card because of a physical change in the inmate's appearance over which the inmate has no control."

1   Willis's having taken it.  Plaintiff's emphasis on defendant Willis's having failed to address his

2   concerns raised in inmate appeals beginning on the very day when plaintiff retrieved or replaced

3   his ID, either by having it returned through defendant Willis's having sent it back after he had

4   relocated after a week or by plaintiff's own action in replacing it, is not particularly germane to

5   whether or not plaintiff suffered a deprivation of his Eighth Amendment rights by being deprived

6   of his psych medication during the undisputed ten-day period during which plaintiff was without

7   his prison ID (see due process discussion below).  The regulation plaintiff cites in support of his

8   claim plainly gives prison personnel the authority to take a prison ID—see text of CAL. CODE REGS.

9   tit.xv, § 3019 at footnote 6, wherein, it is stated, inter alia that "[a]n inmate must surrender his or

10  her identification card or cards at the request of any employee."  While the regulation also

11  requires that the card "be promptly returned to the inmate when staff's use of the card has been

12  accomplished," and although, by this, it may be that a short time is contemplated, the regulation

13  is not particularly helpful to plaintiff inasmuch as accomplishing the use of the card is rather

14  vague language and not a clearly circumscribed timeline.  Plaintiff's belief that the requisite

15  information could have been copied may be true but defendant's taking the card in and of itself,

16  for the apparent purpose of writing plaintiff up for failing to ingest the medication at the time he

17  received it, an assertion by defendant that plaintiff fails to dispute when he simply says that

18  defendant did not provide him a reason for taking the ID,[7] cannot of itself remotely rise to the

19  level of an Eighth Amendment violation.  On the other hand, the defendant does not clarify how

20  it could be plaintiff's responsibility to replace a card confiscated by prison personnel since

21  having the card taken would not in itself constitute a lost or damaged ID without, in such an

22  instance, defendant's having informed plaintiff or prison staff during the time at issue that he had

23  indeed taken it and, at least for awhile, had misplaced it, which no party contends occurred.

24        Plaintiff submits some documentation indicating the medication which he

25  _____

26  [7] In his amended complaint, plaintiff appears to be saying that he had taken the pill when
    he received it (AC, p. 37) , but this issue is not clearly addressed in his opposition.

1  required.  Plaintiff produced with his amended complaint a copy of a document with headed

2  "IDTT," dated 11/01/06, indicating under "Psych Medications," the medication "Remeron"; a

3  copy of a progress note indicating that at CSP-Sol, plaintiff was a new CCCMS[8] arrival on

4  10/04/06, with an outpatient level of care; and a copy of another document indicating that he is

5  the CCCMS [level of care].  AC, Exhibit A, pp. 23-25.  While plaintiff produces no

6  documentation from a physician indicating how he must not be deprived of such medication

7  daily, defendant does not take issue with plaintiff on the point of his being prescribed psychiatric

8  medication.

9           Although defendant avers that he did not intentionally interfere with plaintiff

10  taking his daily psychiatric medication, the court on this motion for summary judgment where,

11  the court finds it is not reasonable of the defendant not to be able to at a minimum to draw an

12  inference that his failure to restore the ID to plaintiff would result in plaintiff's not being able to

13  retrieve his medication since as a correctional officer, he should have basic awareness of the

14  regulations regarding a prisoner's ability to access such medication and, indeed, according to

15  plaintiff, there was a sign at the clinic window where plaintiff had been in line indicating that no

16  medication could be picked up without an ID.  AC, p. 43, ¶ 32.  Moreover, plaintiff, having

17  signed his opposition under penalty of perjury, avers that defendant Willis knew plaintiff was a

18  patient of the mental health program who takes nightly psychiatric medication at CSP-Sol.  Opp.,

19  at 6, 17.  It is unclear why plaintiff was able to obtain an inmate pass during the relevant time

20  period to obtain his meal(s) but not to receive his medication. Opp., p. 11, citing AC, ¶ 32.  It is

21  also not clear why defendant ultimately failed to write plaintiff up, evidently the original purpose

22  for his having taken the ID card after he found it again.  MSJ, DUF # 4 & #6.  In any event,

23  plaintiff's declaration that defendant Willis was required to make sure plaintiff received his

24  prescribed psychiatric medication and that it was not interrupted for ten days but intentionally did

26  [8] Correctional Clinical Case Management System.

14

1   do so, exposing plaintiff to a substantial risk of serious harm, which risk he disregarded presents

2   a genuine issue of material fact that cannot be resolved on this summary judgment motion, where

3   the evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all

4   reasonable inferences that may be drawn from the facts placed before the court must be drawn in

5   favor of the opposing party.  <u>Matsushita</u>, 475 U.S. at 587, 106 S. Ct. at 1356.

6           Nor in the circumstances, does defendant's claim of entitlement to qualified

7   immunity prevail as to this claim.  In resolving a claim for qualified immunity the court

8   addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff,

9   demonstrate that the officers' actions violated a constitutional right and (2) whether a reasonable

10  officer could have believed that his conduct was lawful, in light of clearly established law and the

11  information the officer possessed.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 107 S.Ct. 3034 (1987).

12  Although the Supreme Court at one time mandated that lower courts consider these two

13  questions in the order just presented, more recently the Supreme Court announced that it is

14  within the lower courts' discretion to address these questions in the order that makes the most

15  sense given the circumstances of the case.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808

16  (2009).   In this instance, a genuine issue of fact has sufficiently been raised, even with injuries

17  that may not rise much beyond de minimis, as to whether defendant Willis's actions or omissions

18  were deliberately indifferent to a serious medical condition, rather than simply negligent.

19  Additionally, the applicable law, set forth above, was clearly established and no reasonable

20  officer, in light of it, could have believed conduct resulting in the ten-day deprivation of an

21  inmate's daily prescribed dose of psychiatric medication was lawful.

22  <u>Legal Standard for Fourteenth Amendment</u>

23          As noted above, plaintiff focuses much of his attention on the inmate appeal

24  process.  Although it has been conceded that plaintiff did not have his ID card for the ten days

25  between June 22, 2007 and July 2, 2007, plaintiff states that he filed his first 602 appeal on July

26  2, 2007.  AC, p. 38, ¶ 13.  While plaintiff complains that defendant Willis completely failed to

1    respond to the appeal and lost the original, plaintiff makes no direct reference to the fact that he

2    had his ID or a replacement ID by that day, July 2, 2007.  Id., at ¶ 14.

3              Plaintiff's primary concern within his appeals, that a failure to exhaust his

4    administrative remedies by his appeals not being processed, is not at issue.  See, e.g. AC, pp. 14-

5    15 (plaintiff's 9/26/11 grievance which points out that the failure to respond has inhibited his

6    ability to comply with the PLRA requirement that he properly exhaust all available remedies).

7    He repeatedly complains of defendant Willis' failure to respond to appeals, but each of these was

8    filed when the deprivation of his psych medication was no longer an issue.

9              Prisoners do not have a "separate constitutional entitlement to a specific prison

10   grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.

11   Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the non-existence of, or the failure of prison

12   officials to properly implement, an administrative appeals process within the prison system does

13   not raise constitutional concerns.  Mann v. Adams, 855 F.2d at 640.  See also, Buckley v.

14   Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).  Azeez v.

15   DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural

16   right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise

17   to a protected liberty interest requiring the procedural protections envisioned by the fourteenth

18   amendment").  Specifically, a failure to process a grievance does not state a constitutional

19   violation.  Buckley, supra.  State regulations give rise to a liberty interest protected by the Due

20   Process Clause of the federal constitution only if those regulations pertain to "freedom from

21   restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary

22   incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[9]

23   

24            [9]  "[W]e recognize that States may under certain circumstances create liberty interests
     which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.
     369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to
25   freedom from restraint which, while not exceeding the sentence in such an unexpected manner as
     to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones,
26   445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington[ v.

1   The court finds that defendant is entitled to summary judgment on the ground of due process.

2           Accordingly, IT IS ORDERED that the Clerk make a District Judge assignment to

3   this case.

4           IT IS RECOMMENDED that:

5           1.   Defendant's motion for summary judgment, filed on November 17, 2010

6   (docket # 27), be granted in part and denied in part:

7                   a) GRANTED as to plaintiff's claim of a Fourteenth Amendment due

8   process violation; and

9                   b) DENIED as to plaintiff's claim of a violation of the Eighth

10  Amendment;

11          2.   This action proceed only as to plaintiff's claim that he was subjected to a

12  violation of his rights under the Eighth Amendment by defendant Willis when he was deprived of

13  his daily psychiatric medication for ten days.

14          These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

16  days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19  shall be served and filed within fourteen days after service of the objections.  The parties are

20  advised that failure to file objections within the specified time may waive the right to appeal the

21  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22  DATED: July 11, 2011                        /s/ Gregory G. Hollows

23  _____
                                        UNITED STATES MAGISTRATE JUDGE

24  GGH:009; arme2790.msj

25  Harper], 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of
    psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in

26  relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

                                        17